[Cite as *State v. Martemus*, 2011-Ohio-5844.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96420**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTHONY MARTEMUS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535857

**BEFORE:** Cooney, J., Blackmon, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** November 10, 2011

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender

Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Brad S. Meyer
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113


COLLEEN CONWAY COONEY, J.:

{¶ 1} Defendant-appellant, Anthony Martemus ("Martemus"), appeals his burglary conviction. Finding no merit to the appeal, we affirm.

{¶ 2} In April 2010, Martemus was charged with burglary and theft. The case proceeded to a jury trial at which he was found guilty of burglary and not guilty of theft.

He was sentenced to five years of community control sanctions and agreed to pay $1,000 in restitution to the victim.

{¶ 3} Martemus now appeals, raising five assignments of error.

Ineffective Assistance of Counsel

{¶ 4} In his first assignment of error, Martemus argues that he was denied effective assistance of counsel when his attorney failed to meaningfully cross-examine or otherwise challenge the fingerprint examiner's testimony. In his second assignment of error, Martemus argues that he was denied effective assistance of counsel when his attorney failed to object to inadmissible testimony that a second fingerprint examiner "verified" the results.

{¶ 5} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 6} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; *Strickland* at 686. In evaluating whether a

petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus.

{¶ 7} This court must presume that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Strickland* at 689. Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective. *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001-Ohio-26, 744 N.E.2d 163.

{¶ 8} First, Martemus claims that his counsel was ineffective by failing to meaningfully cross-examine or otherwise challenge the fingerprint examiner's testimony.

{¶ 9} In determining the admissibility of scientific evidence, the Ohio Supreme Court in *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735, adopted the test set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. The *Daubert* court stated that a court must analyze the testimony and determine if the reasoning or methodology used is scientifically valid. Id. at 592-593. The court further stated that "in evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been

subject to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology used has gained general acceptance." Id. at 593-594.

{¶ 10} The Ohio Supreme Court has recognized the use of fingerprints for identification purposes in criminal cases, stating "fingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction, where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime." *State v. Miller* (1977), 49 Ohio St.2d 198, 361 N.E.2d 419, syllabus.

{¶ 11} In the instant case, Felicia Simington ("Simington") testified at trial as an expert in fingerprint identification. She testified that she has worked as a fingerprint examiner for over 15 years and identified thousands of prints. She has been identified as an expert in court proceedings approximately 40 times. Simington testified that she identified the lifted prints in the instant case pursuant to the ACE-V method; a four-step process, consisting of 1) analysis, 2) comparison, 3) evaluation, and 4) verification done separately by another examiner.

{¶ 12} Martemus argues that fingerprints are not reliable for identification purposes. He cites the National Academy of Sciences 2009 report of forensic sciences, which describes the ACE-V method as "too broad to ensure repeatability and transparency; and does not guarantee that two analysts following it will obtain the same results." Martemus argues that Simington's statement that she had 100% certainty that

the prints collected were Martemus's should have been vigorously opposed based on the unreliability of print identification.

{¶ 13} Under the *Miller* standard, there is no dispute that the fingerprints in the instant case were found at the crime scene. Simington testified that she successfully identified the prints from the crime scene to be those of Martemus. Moreover, the victim, Katrina Franklin ("Franklin"), testified that the screen for the bathroom window (the window from which the prints were lifted) was intact and covering the window when she left her house. When she returned three hours later, the screen was missing and her home had been burglarized. Thus, the circumstances indicate that Martemus's prints could only have been impressed while Franklin was gone, which was the time frame in which the crime occurred.

{¶ 14} Martemus further argues that his counsel was ineffective for failing to ask Simington about the quality of the prints and the quality and quantity of the ridges on those prints. Martemus argues that this failure shows a lack of strategy on the part of defense counsel to question the reliability of the prints.

{¶ 15} However, after a thorough review of the record, it is clear that defense counsel did meaningfully cross-examine Simington about the fingerprints. Although counsel did not question Simington about the quality or quantity of the prints and/or ridges, his strategy is evident. Counsel questioned Simington in great detail about whether she could testify as to when the prints came to be on the window. She could not

specify when. Counsel asked if she could speak to how long the prints had been on the window based on her expertise. She could not specify how long. In addition, counsel was also able to elicit testimony from Simington that there had been other fingerprints lifted from the windows that were unidentifiable.

{¶ 16} Counsel's strategy was clearly to put doubt in the mind of the jurors, not based on the quality of the prints, but based on the lack of specificity about when the prints came to be on the window. Thus, Martemus has failed to show that his counsel's cross-examination of Simington fell below an objective standard of reasonableness.

{¶ 17} Second, Martemus argues that his counsel was ineffective for failing to object to the fingerprint examiner's testimony that her identification was "verified." He argues that testimony regarding a second examiner's verification of Simington's identification, as well as references made to the verification in Simington's report, constitute inadmissible hearsay testimony that violated his Confrontation Clause rights. See *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, and *Melendez-Diaz v. Massachusetts* (2009), 557 U.S. ___, 129 S.Ct. 2527, 174 L.Ed.2d 314.

{¶ 18} The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right * * * to be confronted with the witnesses against him[,]" i.e., the "right to confront those 'who bear testimony' against him." *Melendez-Diaz* at 2531, quoting *Crawford* at 51. Under the Confrontation Clause, "[a] witness's testimony against a defendant is * * * inadmissible unless the witness appears at trial or, if the

witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz* at 2531.

{¶ 19} The Confrontation Clause applies only to "testimonial statements," which the United States Supreme Court described as follows:

{¶ 20} "'Various formulations of this core class of testimonial statements exist: ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'"

{¶ 21} *Melendez-Diaz* at 2531, quoting *Crawford* at 51-52.

{¶ 22} A criminal defendant may waive his right to confront a witness. See *Melendez-Diaz* at 2534, fn. 3; see, also, *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, at ¶14. For example, a defendant waives his right to confrontation by failing "to object to the offending evidence[.]" *Melendez-Diaz* at 2534, fn. 3. In *Pasqualone*, the Ohio Supreme court held that an attorney can waive the client's right to cross-examine a lab analyst at trial and that the decision "whether to

cross-examine a particular witness is properly viewed as a decision relating to trial tactics or strategy." Id. at ¶44.

{¶ 23} In the instant case, Martemus's counsel did not object at trial and subsequently waived Martemus's confrontation rights. Thus, Martemus's claim of ineffective assistance of counsel fails under the first prong of the *Strickland* analysis. The question then becomes whether defense counsel's decision to waive Martemus's confrontation rights was prejudicial.

{¶ 24} A constitutional error is not prejudicial if the error is "harmless beyond a reasonable doubt." *State v. Love*, Ross App. No. 05CA2838, 2006-Ohio-1824, ¶34, quoting *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705. "[An] error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt.*"* *State v. Williams* (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph six of the syllabus; *State v. Woods*, Ross App. No. 09CA3090, 2009-Ohio-6169, ¶27; see, also, *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78.

{¶ 25} Here, we find any error harmless beyond a reasonable doubt. Martemus has failed to show that absent the third-party verification of Simington's fingerprint identification, the outcome of the trial would have been different. Martemus has also failed to show how the ability to confront the third-party verifier on the stand would have

altered the outcome of the trial. Thus, any alleged deficiencies in trial counsel's performance did not prejudice Martemus, nor deprive him of a fair trial.

**{¶ 26}** Based on the foregoing, Martemus has not shown to a reasonable degree of probability that but for certain aspects of defense counsel's line of questioning the outcome of the trial would have been different. Defense counsel's performance did not rise to the level of ineffective assistance of counsel.

**{¶ 27}** Accordingly, the first and second assignments of error are overruled.

<u>Sufficiency and Manifest Weight of the Evidence</u>

**{¶ 28}** In his third assignment of error, Martemus argues that his burglary conviction is not supported by sufficient evidence. In his fourth assignment of error, Martemus argues that his burglary conviction is against the manifest weight of the evidence.

**{¶ 29}** A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the State has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt.   *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 30} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶25, the Ohio Supreme Court restated the standard of review for a criminal manifest-weight challenge as follows:

{¶ 31} "The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence.   Id. at 387, 678 N.E.2d 541.   'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.'   Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."

**{¶ 32}** Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

**{¶ 33}** Martemus was convicted of burglary in violation of R.C. 2911.12(A)(2), which states:

**{¶ 34}** "No person, by force, stealth, or deception, shall do any of the following:

**{¶ 35}** "* * * Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"

**{¶ 36}** The following evidence was adduced at trial.

**{¶ 37}** On the evening of November 8, 2008, Franklin left her home on Sophia Avenue and went to a movie. Franklin's three children spent the evening at their grandmother's home. Upon returning to her home three hours later, Franklin discovered that the electricity to the home had been cut off. The electrical box had been ripped

from the side of her home. She entered through the front door and quickly discovered that her back door was wide open. She testified that she had locked the back door before she left the house. Franklin ran back through the front door and called police. Officers responded to the scene to investigate.

{¶ 38} Franklin later discovered that the screen to the first-floor bathroom window was missing. She also discovered that the kitchen window had been removed completely from the frame. Franklin testified that prior to leaving for the movie, the bathroom window screen was properly in place, and her kitchen window was properly installed and completely closed. In addition to the damage to her home, Franklin testified that her camera, laptop, and jewelry had been stolen.

{¶ 39} Detective Costanzo ("Costanzo") was called to the scene to collect finger-prints. He lifted five prints from the exterior of the bathroom window, where the screen had been removed. Costanzo testified that the kitchen window had been totally removed and was most likely the point of entry. Although Costanzo looked for prints inside the home, and for blood, footprints, and tools used to enter the residence, he was unable to find any.

{¶ 40} Simington testified that from the five lifted prints, two prints matched the database print of Martemus's left middle finger, and two prints matched the database print of his left ring finger. Simington testified that she identified the lifted prints as Martemus's with 100% certainty.

{¶ 41} After viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence to establish, beyond a reasonable doubt, that Martemus committed burglary. Moreover, based on the aforementioned facts and circumstances, we find that the conviction is not against the manifest weight of the evidence. We cannot say that the jury lost its way and created a manifest injustice in convicting Martemus.

{¶ 42} Accordingly, the third and fourth assignments of error are overruled.

Restitution

{¶ 43} In his fifth assignment of error, Martemus argues that the trial court erred and exceeded its authority in ordering $1,000 in restitution based on a theft charge for which he was acquitted.

{¶ 44} The standard of review for determining whether the trial court properly ordered restitution is abuse of discretion. *State v. Carrino* (May 11, 1995), Cuyahoga App. No. 67696. "The term 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.

{¶ 45} We initially note that Martemus verbally agreed to pay $1,000 restitution to Franklin during his sentencing hearing. He did not contest the order or the amount. Moreover, his counsel failed to object to the order of restitution or the amount and,

therefore, has waived all but plain error. *State v. Marbury* (1995), 104 Ohio App.3d 179, 181, 661 N.E.2d 271. Crim.R. 52(B) provides that: "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is invoked only if the court finds the circumstances of the case to be exceptional, and that reversal of the restitution order is necessary to prevent a manifest miscarriage of justice. *State v. Landrum* (1990), 53 Ohio St.3d 107, 112, 559 N.E.2d 710.

**{¶ 46}** R.C. 2929.18(A), which governs a sentencing court's authority to order restitution, provides that a trial court imposing a sentence for a felony conviction may sentence the offender to any financial sanction or combination of financial sanctions authorized by law.

**{¶ 47}** R.C. 2929.18(A) further provides that:

"Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

"(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss."

**{¶ 48}** Under these provisions, restitution is limited to the economic loss caused by the defendant's illegal conduct for which he was convicted. *State v. Brumback* (1996), 109 Ohio App.3d 65, 82, 671 N.E.2d 1064.

**{¶ 49}** In the instant case, Martemus was convicted of burglary. It is clear from his brief that Martemus assumes that the $1,000 in restitution was ordered by the court to

cover the loss of Franklin's stolen items, but nowhere in the record is this stated. The trial court simply mentions at sentencing that the order for restitution is meant to cover Franklin's insurance deductible, which certainly could have included the damage done to her screen, her window, and her electric meter — damage which occurred when Martemus burglarized her home.

{¶ 50} We do not find the imposition of $1,000 in restitution in this case to be error. Accordingly, the fifth assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

PATRICIA ANN BLACKMON, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR